IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERESA LYNN SMATHERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-114-E |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

AND NOW, this 5th day of August, 2016, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for Supplemental Security Income ("SSI") benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely

because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] The Court finds no merit in Plaintiff's various arguments that the Administrative Law Judge ("ALJ") erred in finding her to be not disabled, and finds that substantial evidence supports the ALJ's decision.

Plaintiff's primary argument is that the ALJ erred in evaluating her credibility. In so arguing, Plaintiff contends that the ALJ's analysis of the credibility of her testimony, particularly as it relates to the severity of her impairments, was flawed because it was based on errors in the record which Plaintiff maintains were later rectified. Specifically, she states that the ALJ relied on the fact that, during her testimony, she claimed to have quit consuming alcohol 12 years earlier (i.e. 2000), which conflicted with the records of Dr. Gerald Streets, M.D., Plaintiff's treating psychiatrist, which indicated that Plaintiff's drinking had continued until two years earlier (i.e. 2010). (R. 76 and 362). However, Plaintiff contends that records that she submitted after the hearing, specifically those contained in Exhibit 19, confirm that Dr. Streets' records were in error, and that he corrected the records in a manner making them consistent with her testimony. (R. 462). Further, she claims that her hearing testimony that she acquired medical insurance in 2009 was in error, and that later evidence from the Commonwealth of Pennsylvania Department of Public Welfare indicates that she did not receive coverage until 2012. She alleges that this is relevant because the gap in treatment from the alleged onset date in 2009 to 2012 was a factor in the ALJ's evaluation of the credibility of her testimony regarding her symptoms. The Court does not find these arguments compelling.

The ALJ's evaluation of Plaintiff's credibility was unusually thorough in this case and, notwithstanding Plaintiff's argument, was based on far more than the dates on which she stopped drinking and on which she obtained health insurance. Indeed, the primary factor in the ALJ's analysis was Plaintiff's inconsistencies regarding the nature of her abdominal pain. (R. 23). As he pointed out, despite Plaintiff's claim that her abdominal pain had been essentially unchanged since the onset date in 2009 (R. 69-70), she gave very different accounts of the frequency and intensity of her pain to Dr. Adam Slivka, M.D., one of her treating physicians, in March of 2012 (R. 422) and in June of 2012 (R. 419) and at her hearing on September 18, 2013. (R. 70). The ALJ then further indicated that Plaintiff's failure to seek medical help between 2005 and 2012, ***and her failure to follow-up with her doctor for more than a year even after receiving treatment from Dr. Slivka in June of 2012***, undermined her credibility regarding the frequency and severity of her abdominal symptoms. (R. 24). He further relied on discrepancies in her claims regarding her substance abuse, not only in regard to her use of alcohol, but also her use of street drugs such as methamphetamines, cocaine, and benzodiazepines. (R. 24). The ALJ noted that, although Plaintiff denied ever using any of these substances at the hearing (R. 77-78), she reported such use to her medical providers. (R. 462). (Plaintiff acknowledges this discrepancy and offers no explanation for it.) Finally, the ALJ relied heavily on the objective medical evidence in evaluating the credibility of Plaintiff's subjective claims. (R. 24).

Accordingly, the ALJ's determination as to the credibility of Plaintiff's testimony regarding her symptoms was based on far more than the two subjects addressed by Plaintiff's argument. Even setting aside the issues of when Plaintiff quit drinking and when she obtained medical insurance, there was more than ample evidence to support the ALJ's findings regarding Plaintiff's credibility. Moreover, the evidence upon which Plaintiff relies in support of her argument does not really provide quite the support she claims that it does. There are several problems, for instance, with her claim that she has provided evidence that she was without medical insurance until 2012, thereby negating the ALJ's concerns as to why she did not seek medical treatment for her conditions between 2005 (the last time she had seen Dr. Slivka) and 2012. First, even assuming that the supplemental exhibit (R. 469-70) does establish that Plaintiff was without insurance until 2012, it does not establish that Plaintiff had been unable to obtain either insurance or medical care prior to that date. The ALJ noted the long break of seven years between Plaintiff seeking treatment for her supposedly disabling condition, and nothing in the record suggests that Plaintiff tried to obtain insurance and/or care during that period but was unable to do so. In other words, Plaintiff's failure to demonstrate that she tried to obtain treatment prior to 2012 remains unchanged, regardless of the supplemental exhibit. In addition, Plaintiff did ***not*** claim that she waited to return to Dr. Slivka in 2012 because it was only then that she had obtained a medical card. Rather, she gave a completely different reason for waiting to seek treatment related to the need to wait for her liver readings to reach a certain level. (R. 69).

Regardless, the supplemental exhibit does not necessarily contradict Plaintiff's own testimony that she obtained a medical card in or around 2009. The exhibit establishes that Plaintiff's medical assistance program applicable at the time of her hearing opened on February 2, 2012. (R. 470). It does not, however, indicate whether Plaintiff had coverage during an earlier period that had previously been closed. Indeed, it is not disputed that Plaintiff had medical assistance in 2005, but the supplemental exhibit does not reflect that. It therefore could well also be that Plaintiff did, as she herself claimed, obtain a medical card in 2009 or thereabout, only to have lost that coverage sometime prior to February of 2012. In this regard, the Court notes that the record reflects that Plaintiff had medicaid coverage in 2008 when she was treated at the emergency room of Titusville Area Hospital. (R. 291). This further supports the ALJ's reliance on Plaintiff's own testimony that she did, indeed, have medical insurance in or around 2009. In sum, the supplemental exhibit does not on its face contradict Plaintiff's claim that she obtained insurance coverage in 2009, and, even if it did, it offers no explanation as to why she waited until 2012 to seek insurance and/or treatment.

Plaintiff's argument regarding the date on which she quit drinking fares little better. First, that date was only one of several aspects of her testimony regarding her use of alcohol that the ALJ found to be inconsistent with the medical record. He also noted that Plaintiff, when seeking emergency room treatment in April of 2012, denied ever using alcohol, inconsistent with her hearing testimony. (R. 24, 75-76, 297). Moreover, he noted that, in her testimony, Plaintiff claimed to have been drinking a case of beer a day, while the records indicate that she informed Dr. Streets that she was drinking substantially more – three cases of beer and three fifths of vodka per day. (R. 24, 76, 462). The Court further notes that, even considering the correction to Dr. Streets' records contained in Exhibit 19 as to the date on which Plaintiff quit drinking, this

point is ***still*** inconsistent in the record, as records from Dr. Slivka's office indicate that Plaintiff stated, during a March 2, 2005 visit, that she had quit drinking in January of that year. (R. 322). Considering that there is still a great deal of inconsistency in the record as to Plaintiff's use of alcohol, and considering that this was merely one of many factors that the ALJ discussed in evaluating Plaintiff's credibility, Exhibit 19 in no way changes the fact that substantial evidence supports the ALJ's credibility findings.

Plaintiff also argues that the ALJ erred in his analysis of her mental impairments, specifically in rejecting the opinions of Dr. Streets regarding her functional limitations. The Court finds, however, that the ALJ provided an adequate basis for assigning little weight to Dr. Streets' opinions, despite the fact that he is one of Plaintiff's treating physicians. It is true that when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

However, it is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well.

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)(internal citations omitted in part). Here, the ALJ included in his decision a substantial discussion as to why he weighed Dr. Streets' opinions as he did and as to how he formulated Plaintiff's residual functional capacity ("RFC").

Despite Plaintiff's claim that the ALJ rejected Dr. Streets' opinions merely because they were based on Plaintiff's subjective complaints, the ALJ actually considered numerous factors in weighing these opinions. He considered, for instance, the fact that, despite alleging an onset date of June 30, 2009, Plaintiff had not sought any mental health treatment whatsoever until August of 2012, which was actually after she had underwent a consultative examination in regard to her

claim for benefits. (R. 25). He further pointed out the different conclusions reached by that consultative examiner, Robert P. Craig, Ph.D., as well as those of the non-examining state reviewing agent, Jan Melcher, Ph.D. (R. 25, 27-28). The ALJ, in fact, gave great weight to the functional assessments of Drs. Craig and Melcher, which he found to be consistent with the evidence of record. (R. 27-28). Finally, the ALJ reviewed Plaintiff's treatment records and examination results at great length and explained how they were inconsistent with the opinions of Dr. Streets as to Plaintiff's functional limitations. (R. 25-28). This evidence more than provides substantial evidence in support of the weight the ALJ assigned to the various medical opinions and as to his findings regarding Plaintiff's mental RFC.

Although, in general, "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him," Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000)(internal quotations omitted), where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit." Id. at 317. See also Dula v. Barnhardt, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). The ALJ, of course, "'cannot reject evidence for no reason or for the wrong reason,'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429), and can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the opinion. See SSR 96-6p, 1996 WL 374180 (S.S.A.), at *2 (July 2, 1996). In certain cases, it would not be unwarranted to give more weight to the non-examining professional's opinion. See Salerno v. Comm'r of Soc. Sec., 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of the non-examining state agency reviewing psychologist because his opinion was more supported by the record than the opinions of the treating physician and the consultative examiner). As in Salerno, the record here establishes that the ALJ certainly could give more weight to the opinions of the consultative examiner and the state agency reviewing agent than to those of Dr. Streets. Regardless, as explained above, the ALJ's decision relies on far more than the non-treating reviewers' opinions, relying, instead, primarily on the objective medical evidence.

Plaintiff next alleges that the ALJ erred in his analysis of her back impairment in that he did not find her back impairment to constitute a severe impairment at Step Two of the sequential analysis. However, in her argument, she fails to acknowledge that the Step Two determination as to whether she is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment. See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006). In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D. Pa. March 27, 2006). Since Plaintiff's claim was not denied at Step Two, it does not matter whether the ALJ correctly or incorrectly found Plaintiff's other alleged impairments to be non-severe.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 13) is DENIED and Defendant's Motion for Summary Judgment (document No. 17) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

---

Of course, even if an impairment is non-severe, it may still affect a claimant's RFC. In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996). See also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." S.S.R. 96-8p at *5. Accordingly, merely because the ALJ did not find Plaintiff's back pain to be severe does not mean that this condition could not still have affected Plaintiff's RFC. Here, however, the ALJ very specifically considered Plaintiff's back pain in formulating her RFC. (R. 23, 25). In fact, he expressly included limitations to account for Plaintiff's back pain. (R. 25). Accordingly, there is no basis for Plaintiff's argument regarding the ALJ's analysis at Step Two or as to her RFC.

Plaintiff's final argument is that the ALJ's analysis of the vocational evidence was flawed because he disregarded the vocational expert's testimony that missing more than a day per month, including coming in substantially late or leaving substantially early, and being off-task more than 10 per cent of the work day would preclude employment. (R. 99-100). However, the ALJ did not include any such limitations in Plaintiff's RFC, and, as discussed herein, substantial evidence supports his finding. Although a hypothetical question to a vocational expert must accurately portray the claimant's physical and mental impairments, it need reflect only those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). The ALJ properly relied on the expert's testimony regarding the functional limitations supported by the record.

Accordingly, for all of the reasons stated herein, the Court affirms the ALJ's decision.